***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence; receive further evidence; rehear the parties or their representative; or amend the Opinion and Award except for minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The carrier on the risk is Travelers Insurance Company.
2. The average weekly wage is $495.00, yielding a weekly compensation rate of $330.00.
3. The date of the alleged injury is July 4, 2000.
4. The parties are bound by the North Carolina Workers' Compensation Act.
 ***********
Based upon the evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff is a 47-year old who has worked primarily as a carpenter most of his adult life.
2. The defendant, Charles Crisp, owns and operates Crisp Construction Company as an unincorporated business. The defendant is engaged in the business of setting up trade shows such as the Charlotte Christmas Show and also purchased, remodeled and sold private residences. The defendant paid plaintiff an hourly rate of $15.00 per hour and paid him weekly by check. The defendant provided all the major tools and equipment to the plaintiff. The defendant told the plaintiff what to do on the various projects on the various projects assigned to plaintiff. The defendant purchased a workers' compensation policy to cover his employees. The plaintiff did not work for anyone else during the several years he was employed by the defendant. The plaintiff never negotiated a lump sum on any of these projects, but was paid weekly by a flat hourly rate. The defendant did not withhold taxes or Social Security, did not provide a W-2 form to the plaintiff nor did the defendant ever provide the plaintiff with a 1099 form. The defendant contended that plaintiff was a sub-contractor. The defendant hired as many as thirty other individuals, paid them all by the hour on a weekly basis by check from his company, provided the tools and materials for these employees to carry out the various projects that the defendant had contracted to perform. While the defendant may not have supervised all of his employees as to the details of their work, the defendant did direct the employees as to what projects on which they were assigned to work.
3. On July 4, 2000, plaintiff, along with five (5) other employees were remodeling a private residence in Gaston County, North Carolina on behalf of defendant. The defendant would leave a "to do list" on the counter for plaintiff and the other employees to follow each day. On that date, plaintiff was helping two other employees carry a pre-fabricated wooden deck section to attach to the residence, when he stumbled over a concrete block upon which the deck was to be placed and felt a burning sensation and heard a pop in his lower back. Due to continued pain and stiffness in his back which increased the evening following this incident, the plaintiff's wife took him to an emergency room the following day on July 5, 2000. The records of the emergency room of Piedmont Medical Center in Rock Hill, South Carolina show that the plaintiff appeared there complaining of back pain brought on by carrying a deck and feeling a pop in his back.
4. Within a matter of days the defendant was aware that the plaintiff had injured his back on the job.
5. After July 4, 2000, plaintiff returned to work for defendant, but due to his ongoing back pain he was not able to carry out many of his prior activities. Defendant authorized plaintiff to obtain additional help to assist him in carrying out his job. Plaintiff did so and these individuals were hired and paid by the defendant on an hourly basis. Plaintiff continued to work for the defendant up until the last of April, 2001, when his pain had increased to the point where he could no longer carry out his job. Plaintiff has not worked for the defendant or for anyone else due to his pain in his lower back since May 1, 2001.
6. On January 26, 2001 plaintiff told his family doctor, Dr. Donald Shuler, that he was having increased pain and difficulty with his back. He related it to an incident which had occurred the previous July. Dr. Shuler subsequently referred him to Dr. William McCarthy, an orthopaedic surgeon, for back pain. Dr. McCarthy in turn, referred the plaintiff to Dr. Edward Hanley of Carolinas Medical Center, Orthopaedics Department. Dr. Hanley saw plaintiff on March 30, 2001 and began to treat him for his back injury sustained in the accident of July 4, 2000.
7. Dr. Hanley performed a decompression laminectomy at L5-S1 and a posterior lateral fusion at L5-S1 with steffee instrumentation and left iliac crest bone graft on May 30, 2001. It has been stipulated that Dr. Edward N. Hanley, Jr. is an expert in the field of medicine with a specialty in orthopaedic surgery. Dr. Hanley continues to treat plaintiff. Dr. Hanley is of the opinion that the incident of July 4, 2000 most likely caused the increase of pain and discomfort which the plaintiff experienced thereafter. He felt the incident of July 4, 2000 exacerbated the lumbar disc problems which plaintiff had suffered preexisting that date. He further was of the opinion that the surgery of May 30, 2001 was appropriate and was a direct result of the injuries received by the plaintiff on July 4, 2000. It was Dr. Hanley's medical opinion and to a reasonable degree of medical certainty that the incident of July 4, 2000 aggravated or exacerbated a problem in plaintiff's lumbar spine, specifically the spinal column and disc at L5-S1. Dr. Hanley is now of the opinion that there is a residual disc between L5-S1 that is the source of plaintiff's continued chronic pain and that the plaintiff would have been justified in being out of work since May 1, 2001. Dr. Hanley is of the opinion that plaintiff has not reached the point of maximum medical improvement and may need further surgery and treatment.
8. The plaintiff had three prior back surgeries at the same level as the surgery performed by Dr. Hanley. These surgeries were prior to plaintiff's incident of July 4, 2000.
9. Defendant's refusal to accept plaintiff's claim for worker's compensation due to the fact that plaintiff was hired as a subcontractor in view of the facts as detailed in the foregoing Findings of Fact is unreasonable. Defendant's son works in the same capacity as plaintiff for the defendant. Defendant submitted a claim for Workers' Compensation for an injury his son had sustained.
10. This matter was defended without reasonable grounds.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. On July 4, 2000 plaintiff was an employee of the defendants. N.C. Gen. Stat. § 97-2(2).
2. Plaintiff suffered an injury by accident arising out of and in the course of his employment with the defendant on July 4, 2000, which aggravated or exacerbated a pre-existing back condition requiring surgery. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff's failure to provide formal, written notice of the accident is reasonably excused and defendants were in no way prejudiced by this delay. N.C. Gen. Stat. § 97-22.
4. Plaintiff remains temporarily totally disabled and has not reached the point of maximum medical improvement. Plaintiff has been temporarily totally disabled since May 1, 2001. N.C. Gen. Stat. § 97-29.
5. Plaintiff's surgery by Dr. Hanley on May 30, 2001 was appropriate and causally related to the back injury sustained by the plaintiff on July 4, 2000. N.C. Gen. Stat. § 97-25.
6. Since the defense of this claim was without reasonable grounds, the costs of the proceedings, including reasonable fees for plaintiff's attorney, should be assessed against the defendants. N.C. Gen. Stat. § 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in the amount of $330.00 per week directly to the plaintiff for the time period beginning May 1, 2001 and continuing until further order by the Industrial Commission. The portion of this amount that has accrued shall be paid to plaintiff in a lump sum.
2. Defendants shall pay for the medical treatment incurred as a result of the July 4, 2000 compensable injury including the treatment provided by the Piedmont Medical Center and Dr. Edward Hanley, Jr., including surgery. Defendants shall continue to pay all future medical treatment recommended by Dr. Hanley reasonably related to plaintiff's injury.
3. Defendants shall pay the costs of this action including a reasonable attorney fee to plaintiff's counsel in the amount equal to twenty five percent (25%) of the compensation benefits accrued herein and to be paid to plaintiff.
4. Defendant shall pay the costs, including an expert witness fee of $335.00 to Dr. Edward Hanley.
This the 5th day of March, 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER